**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLANDS-ODESSA DIVISION**

| | |
|---|---|
| **VIRTUAL CREATIVE ARTISTS, LLC,** | C.A. No. 7:25-cv-209-DC-DTG |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| **HARBOR FREIGHT TOOLS USA, INC.,** | **PATENT CASE** |
| Defendant. | |

## AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Virtual Creative Artists, LLC, pursuant to Rule 15(a)(1)(B), Fed.R.Civ.P., files this Amended Complaint for Patent Infringement against Harbor Freight Tools USA, Inc. and would respectfully show the Court as follows:

## I. THE PARTIES

1.      Plaintiff Virtual Creative Artists, LLC ("VCA" or "Plaintiff") is a Delaware limited liability company, having business address at 338 Gracious Way, Henderson, NV  89011.

2.      On information and belief, Defendant Harbor Freight Tools USA, Inc. ("Harbor Freight" or "Defendant") is a corporation organized and existing under the laws of Delaware. Defendant has a place of business at 3138 Andrews Hwy, Odessa, TX 79762. Defendant has a registered agent at Corporate Creations Network Inc., 5444 Westheimer #1000, Houston, TX 77056.

## II. JURISDICTION AND VENUE

3.      This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject matter jurisdiction of such action under 28 U.S.C. §§ 1331 and 1338(a).

4.      On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the Texas Long-Arm Statute, due at least to its business in this forum, including at least a portion of the infringements alleged herein at 3138 Andrews Hwy, Odessa, TX 79762 and 1000 N Midkiff Rd, Ste 116, Midland, TX 79701.

5.      Without limitation, on information and belief, within this state, Defendant has used the patented inventions thereby committing, and continuing to commit, acts of patent infringement alleged herein.  In addition, on information and belief, Defendant has derived revenues from its infringing acts occurring within Texas.  Further, on information and belief, Defendant is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from goods and services provided to persons or entities in Texas.  Further, on information and belief, Defendant is subject to the Court's personal jurisdiction at least due to its sale of products and/or services within Texas. Defendant has committed such purposeful acts and/or transactions in Texas such that it reasonably should know and expect that it could be haled into this Court as a consequence of such activity.

6.      Venue is proper in this district under 28 U.S.C. § 1400(b). On information and belief, Defendant has businesses in this district at 3138 Andrews Hwy, Odessa, TX 79762 and 1000 N Midkiff Rd, Ste 116, Midland, TX 79701.  On information and belief, from and within this District Defendant has committed at least a portion of the infringements at issue in this case.

7.       For these reasons, personal jurisdiction exists and venue is proper in this District under 28 U.S.C. § 1400(b).

### III.  COUNT I
### (PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 9,501,480)

8.      Plaintiff incorporates the above paragraphs herein by reference.

9.      On November 22, 2016, United States Patent No. 9,501,480 ("the '480 Patent") was duly and legally issued by the United States Patent and Trademark Office. The '480 Patent is titled "Revenue-Generating Electronic Multi-Media Exchange and Process of Operating Same." A true and correct copy of the '480 Patent is attached hereto as Exhibit A and incorporated herein by reference.

10.     VCA is the assignee of all right, title, and interest in the '480 Patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '480 Patent. Accordingly, VCA possesses the exclusive right and standing to prosecute the present action for infringement of the '480 Patent by Defendant.

11.     The invention relates to the field of creating and distributing media content, in particular, creating media content based upon submissions received on an electronic media exchange. At the time of the original invention in 1998, there was an Internet-centric problem that required a technical solution—how to develop a computer system that would allow remote contributors of electronic content to share and collaborate their content to develop new media content. The claimed invention, which predates modern crowdsourcing solutions, offers a unique, unconventional, and specially configured combination of "subsystems" in which to address the Internet-centric problem.

12.     As set forth in the claims, the claimed invention has a collection of unconventional and particularly configured subsystems, including:

- "an electronic media submissions server subsystem,"

- "an electronic multimedia creator server subsystem,"

- "an electronic release subsystem,"

- "an electronic voting subsystem," and

- their corresponding specialized databases.

13.    Each of these subsystems are configured in a very specific (and not generic), unconventional and non-routine manner to offer the novel and non-obvious claimed invention. For example, claim 1 requires an "electronic media submissions database," which is a subsystem that receives media submissions from Internet users.  This is not a generic database but rather a scalable database that must be able to receive, store, and manage multiple petabytes of multimedia data received from users all over the world.  This is one of the many specialized databased required in the claim.  In fact, the specification discloses the use of a sophisticated database management system known in the art at the time that was capable of handling data at this level, Oracle7.  This type of database management system cannot operate on a generic computing system but rather requires specialized hardware and software.

14.    As another example, the claim requires a specifically configured "electronic media submission server subsystem."  This subsystem is defined as specifically having:

- "one or more data processing apparatus,"

- "an electronic media submission database stored on a non-transitory medium," and

- "a submissions electronic interface."

The "submissions electronic interface" is further specifically "configured" [1] "to receive electronic media submissions from a plurality of submitters over a public network, and [2] store the electronic media submissions in the electronic media submission database."  Further, "the electronic media submissions database" in this subsystem is further required to "store[] [1] data identifying the submitter and [2] data indicating content for each electronic media submission." Collectively, the level of detail included in this very particular, well-defined, and unconventional subsystem makes clear that the claims include substantially more than the alleged abstract idea or merely performing an alleged abstract idea on a computer.

4

15.     Similarly, the claim also requires a separate specifically configured "an electronic multimedia creator server subsystem." The claim specifically defines how this second subsystem interacts with other components including being "operatively coupled to the electronic media submissions server subsystem." The claim also specifically defines this subsystem as "having":

- "one or more data processing apparatus" and
- "an electronic creator multimedia database stored on a non-transitory medium."

16.     This subsystem is also specifically "configured [1] to select and [2] retrieve a plurality of electronic media submissions from the electronic media submissions database using an electronic content filter located on the electronic multimedia creator server." The "filter" also includes a very specific algorithm of "being based at least in part on at least one of the one or more user attributes to develop multimedia content to be electronically available for viewing on user devices." Even more detail is provided by requiring "the identification of the submitter [be] maintained with each selected and retrieved submission within the multimedia content." Here again, collectively, the level of detail included in this very particular and well-defined and unconventional subsystem makes clear that the claims include substantially more than an alleged abstract idea or merely performing an alleged abstract idea on a computer.

17.     The claim also includes "an electronic release subsystem," which is well defined and not conventional or routine. The claim defines how this subsystem is "operatively coupled to the electronic multimedia creator server subsystem." The claim also defines the components of this subsystem as having "one or more data processing apparatus" and being particularly "configured to make the multimedia content electronically available for viewing on one of more user devices." These details, collectively, also make this very particular and well-defined and

unconventional subsystem substantially more than an abstract idea or performing an abstract idea on a computer.

18.     The claim also requires "an electronic voting subsystem," which is well-defined, specific, and unconventional.  This claimed subsystem has "one or more data processing apparatus" and is specifically "configured to enable a user to electronic vote for or electronically rate an electronically available multimedia content or an electronic media submission within a respective electronically available multimedia content."

19.     Claim 1 is a specific and discrete implementation.  For example, the claim requires an "electronic content filter" located at the server, remote from end users, and customizable based on user attributes.  As another example, the "electronic voting subsystem" at the time of the invention was novel and inventive and added sufficient inventive contributions to avoid a risk of preempting creating and distributing media content.   It is possible to create and distribute media content without ever having to include a "voting" subsystem on what components should be included in such media content.  The detailed configuration "to enable a user to vote for or electronically rate an electronically available multimedia content or an electronic media submission within a respective electronically available multimedia content" has the level of particularity that avoids any risk of preemption.

20.     Furthermore, the very particular and specifically configured "electronic media creator subsystem" not only provides a detailed and unique physical structure and interrelationship with other claimed components, but also includes a very specific configuration that is not conventional or routine.  The claims make clear the interrelationship of the "electronic multimedia creator server subsystem" with respect to "the electronic media submission server subsystem" which must be "operatively coupled" thereto.   The claims also provide detail on how the

"electronic media creator subsystem" is "configured" "to select and retrieve a plurality of electronic media submissions from the electronic media submission database using an electronic filter." They also provide detail on how the "electronic filter" is "based at least in part on at least one of the one or more user attributes" and specifies that "the identification of the submitter is maintained with each selected and retrieved submission within the multimedia content."

21.     These arguments overcame a patent eligibility rejection under 35 U.S.C. §101 of the claim at issue during the prosecution of the '480 patent before the United States Patents and Trademark Office.

22.     **Direct Infringement.** Upon information and belief, Defendant directly infringed claims 1, 4, 13 of the '480 Patent in Texas, and elsewhere in the United States, by employing a computer-based system using https://www.harborfreight.com/ ("Accused Instrumentality") (*e.g.,* https://www.harborfreight.com/).

23.     Harbor Freight used a computer-based system for its Accused Instrumentality, to enable Host Brands (Submitters) to share multimedia content pertaining to Product Listings. The Product Listings included multimedia content including image and textual content (*e.g.,* a Product Name, Product Description and images of the Product offered) which were shown to other users based on, *inter alia*, user attributes. Harbor Freight, during the relevant time period, took advantage of multiple cloud server providers for the Accused Instrumentality, as discussed above, as well as scalability within its cloud server providers, employing separate server subsystems for all its meaningfully different functions. Harbor Freight used during the relevant time period numerous different networks and providers for, *inter alia*, content management systems, web servers, web hosting, data centers, proxy certificates, SSL certificates, traffic analysis, advertising, and tagging,

thereby using separate server subsystems for all its meaningfully different functions, such as those indicated below.



(*E.g.,*     https://web.archive.org/web/20191214070712/https://www.harborfreight.com/merchandising-promotions/clearance.html).



**Site Info - Harborfreight.com**

Overview of web technologies used by Harborfreight.com.

**Website Background**

| | |
|---|---|
| Description on Homepage | Harbor Freight Tools | Whatever You Do, Do It For Less<br><br>Harbor Freight is America's go-to store for low prices on power tools, generators, jacks, tool boxes and more. Shop our 1500+ locations. Do More for Less at Harbor Freight. |
| Popularity rank | Top 10k among all websites |

**Content Management System**

| | |
|---|---|
| WordPress 6.7.1<br>version 6.6.2 used until recently<br>0% of sites use a newer version<br>used on a subdomain | WordPress is an open source blog publishing and content management system, based on PHP and MySQL. |

**Server-side Programming Language**

| | |
|---|---|
| PHP<br>used on a subdomain | PHP is a scripting language for creating websites. |

**Client-side Programming Language**

| | |
|---|---|
| JavaScript | JavaScript is a lightweight, object-oriented, cross-platform scripting language, often used within web pages. |

**JavaScript Library**

| | |
|---|---|
| jQuery 3.6.0<br>54% of sites use a newer version | jQuery is a JavaScript library that simplifies HTML document traversing, event handling, animating and Ajax interaction. Originally developed by John Resig. |

**Web Server**

| | |
|---|---|
| Nginx<br>used on a subdomain | Nginx (pronounced as "engine X") is a lightweight open source web server developed by Igor Sysoev. |

**Web Hosting Provider**

| | |
|---|---|
| Automattic<br>used on a subdomain | Automattic is hosting WordPress-based websites. |
| | hosting info partly based on data from ipinfo.io |

**Data Center Provider**

| | |
|---|---|
| Automattic<br>used on a subdomain | Automattic is hosting WordPress-based websites. |

**Reverse Proxy Service**

| | |
|---|---|
| Fastly | Fastly is a content delivery network. |

**DNS Server Provider**

| | |
|---|---|
| Vercara UltraDNS | Vercara (formerly Neustar) offers DNS services under the UltraDNS brand. |

**Email Server Provider**

| | |
|---|---|
| Proofpoint | Proofpoint provides email protection and other IT security services. |

**SSL Certificate Authorities**

| | |
|---|---|
| DigiCert | DigiCert is an SSL certificate authority. This includes Verizon, whose Enterprise SSL Business has been acquired by DigiCert. |
| Let's Encrypt<br>used on a subdomain | Let's Encrypt is a free, automated, and open certificate authority provided by the Internet Security Research Group. |

| Site Elements | |
|---|---|
| External CSS | External Cascading Style Sheets define style rules in a separate CSS file. |
| Embedded CSS | Embedded Cascading Style Sheets define a set of style rules in a <style> element within a web page. |
| Inline CSS | Inline Cascading Style Sheets define style rules directly within an (X)HTML element using the style attribute. |
| Brotli Compression | Brotli is a lossless compression algorithm developed by Google. |
| Weak ETag | A weak ETag is an HTTP header field for validation of cached web pages, that indicates a semantically equivalent page in the cache. |
| IPv6 used on a subdomain | The Internet Protocol version 6 (IPv6) provides amongst others a vastly larger address space than the preceding version 4. We consider a website to support IPv6 if a 128-bit address is assigned to it, regardless of the content delivered at that address. |
| HTTP Strict Transport Security | HTTP Strict Transport Security (HSTS) defines a mechanism enabling web sites to declare themselves accessible only via secure connections. |
| Default subdomain www | The websites redirects visitors to its www subdomain, e.g. from example.com to www.example.com. |
| Default protocol https | The websites redirects visitors to use SSL encryption, e.g. from http://example.com/ to https://example.com/. |
| Cookies expiring in months used until recently | Persistent cookies with an expiration time between 1 month and 1 year. |
| Non-HttpOnly Cookies used until recently | Non-HttpOnly cookies are used in the HTTP protocol and also in client side scripts, which may be a security threat. |
| Non-Secure Cookies used until recently | Non-secure cookies may be used via an unencrypted connections, which may be a security threat. |
| Structured Data Formats | |
| JSON-LD | JSON-LD (JavaScript Object Notation for Linked Data) is a method of encoding Linked Data using JSON. |
| Open Graph | The Open Graph protocol, originally developed by Facebook, is an RDFa-based format that enables any web page to become a rich object in a social graph. |
| Twitter/X Cards used on a subdomain | Twitter/X Cards enable automatic attachment of photos, videos and media elements to tweets. |
| Generic RDFa | Generic RDFa (Resource Description Framework in attributes) is RDFa without further specialization. |
| Markup Language | |
| HTML5 | HTML5 is the fifth revision of the HTML standard. |
| Character Encoding | |
| UTF-8 | UTF-8 (8-bit Unicode Transformation Format) is a variable-length character encoding for Unicode, which is backwards compatible with ASCII. |
| Image File Formats | |
| PNG | PNG (Portable Network Graphics) is a lossless compression image format, suitable to store graphics with uniformly colored areas, and originally introduced as a free, open-source successor of GIF. |
| JPEG | JPEG (Joint Photographic Experts Group) is a lossy compression method suitable to store photographic images. |
| SVG | Scalable Vector Graphics (SVG) is an XML-based vector image format. |
| GIF | GIF (Graphics Interchange Format) is a lossless compression image format, originally introduced by CompuServe and suitable to store graphics, logos and simple animations. |
| WebP | WebP is an image format that provides lossless and lossy compression, developed by Google. |
| Top Level Domain | |
| .com | Commercial entities |
| Server Location | |
| United States used on a subdomain | |
| Content Language | |
| English | |

**Share this page**



About Us   Disclaimer   Terms of Use   Privacy Policy   Advertising   Contact

W3Techs on   in LinkedIn    Mastodon    Bluesky

Copyright © 2009-2025 Q-Success

(https://w3techs.com/sites/info/Harborfreight.com).  The Accused Instrumentality therefore relied on various servers and data centers to provide the Accused Instrumentality to submitters and users of the website.

24.    The Accused Instrumentality included, as required by claim 1, "an electronic media submissions server subsystem having one or more data processing apparatus and an electronic media submissions database stored on a non-transitory medium" to process and store received submissions from a plurality of Hosts (submitters).   For example, the use of the "electronic media submissions server subsystem" and the "electronic media submissions database" are shown by the Accused Instrumentality having content pertaining to their respective electronic media submission (*e.g.,* Product Listing provided by third parties through a product submission system) on the Accused Instrumentality, as well as multimedia content displayed on one or both of the user's profile and the Product Listing.  The submissions pertaining to building a user profile and to posting a Product Listing include, *e.g.,* photo and/or textual content. The submissions were provided to the Accused Instrumentality via a submissions electronic interface, *e.g.,* a content portal (*e.g.*, "PO Connect" shown in the screenshot below), accessible for example by logging in and selecting an option to upload such content or import content, configured to receive such electronic media, from a plurality of submitters (*e.g.,* Hosts/users) over a public network (*e.g.,* the Internet) and stored, via an uploading process, in said electronic media submissions database for use in distribution to other users of the Accused Instrumentality. Harbor Freight documentation shows that proposed goods and services are uploaded using Harbor Freight's website and included links to offerings of vendors, which can include a link to an online catalog of goods and services for the vendor:

## Product Change Application Form

| | File No.:2015-Month-# |
|---|---|

| Vendor Information | | | |
|---|---|---|---|
| Vendor # | | Vendor Name | |
| Applicant Name | | Application Date | |
| Phone # | | Email Address | |

| Product Information | | | |
|---|---|---|---|
| SKU# | | Product Description | |

| Change Reason | | |
|---|---|---|
| ☐ Standard or US laws | | ☐ Need Cert Update |
| ☐ Component Change | Detailed Reason Of Change | ☐ Need Cert Update |
| ☐ Construction Change | | ☐ Need Cert Update |
| ☐ Others | | ☐ Need Cert Update |

| Change Description |
|---|
| Comparison Photos |
| |

(*E.g.,* https://web.archive.org/web/20200315103020/https://www.harborfreight.com/gsvm.html).

**Proposed Goods and Services**                    6. Proposed Goods and Service.pdf

Please upload one or more documents or sheets describing your offerings, line cards, catalogs, links to offerings OR list links to your offerings that illustrate the catalog of proposed lines of goods and or services you carry and offer under this proposal. It does not have to be exhaustive but should, at a minimum tell us what you are offering. It could be as simple as a sheet with your link to your online catalog of goods and services.

(https://www.tips-usa.com/assets/Vendorspdf/210304_MRO_Harbor_Freight_Redacted.pdf).

Furthermore, uploading such information occurs through Harbor Freight's website:



([https://poconnectsit.harborfreight.com/login](https://poconnectsit.harborfreight.com/login)).  The page at harborfreight.com states that the portal allowed vendors to "manage change requests," and therefore used the Accused Instrumentality's electronic media server to submit electronic media submissions (*e.g.*, Product Listings) for storage in Harbor Freight's electronic media submissions database.  (*Id.*).  Furthermore, upon uploading the Product Listings, the Accused Instrumentality necessarily stored the information in an electronic media submissions database in order to retrieve the information at a later time.

25.    The electronic media submissions database of the Accused Instrumentality used by Harbor Freight which stored the submissions further stored data identifying the submitter and data indicating content for each electronic media submission (*e.g.,* Product Listing such as the generator, tank air compressor, lube air compressor). For example, as shown below and highlighted in the screenshot, data identifying the user (submitter) stored in the electronic media submissions

database included, *e.g.,* a name (*e.g.,* "Predator" and "Central Pneumatic"). As also shown below and highlighted in the screenshot, data indicating content for each electronic media submission included photos (*e.g.*, photos of the generator, tank air compressor, lube air compressor) and/or textual content pertaining to the Product Listing (*e.g.*, "6500 Watt Max Starting Gas Powered Generator – EPA III," "4 Gallon 2 HP 125 PSI Twin Tank Compressor," "8 gallon 2 HP 125 PSI Oil Lube Air Compressor").



(*E.g.,*        https://web.archive.org/web/20191214070712/https://www.harborfreight.com/merchandising-promotions/clearance.html).



(*E.g.*, *id.*).

26.    The Accused Instrumentality also comprised a user database comprising one or more user attributes stored therein.  For example, individual host-users signed up and created Product Listings on Harbor Freight's Accused Instrumentality, which were stored on a user database. Such user database was stored in memory available through the Accused Instrumentality, for example as discussed above.  The existence of the user database is demonstrated by the ability of Accused Instrumentality to receive submissions of Product Listings and to then retrieve and release the Product Listings to visitors of the Accused Instrumentality from the database.  As shown and highlighted in the screenshot below, the user attributes of users (brands) who created Product Listing contained on the user database included, *e.g.,* Brand (*e.g.*, "Predator", "Central Pneumatic"), size and brief description (*e.g.*, "6500 Watt Max Starting Gas Powered Generator –

EPAIII," "4 gallon 2 HP 125 PSI Twin Wank Air Compressor"), comparison to other products (*e.g.*, "Compare to Honda EM5000SXK3 at $2149.00. **Save $1,679.03,**" "Compare to Craftsman 009-16874 at $239.99. **Save $90.02**"), and price (*e.g.*, "$469.97," "$149.97," "$139.97"), as well as other specifications as shown in the examples below.



(*E.g.,*    https://web.archive.org/web/20191214070712/https://www.harborfreight.com/merchandising-promotions/clearance.html).

27.    The Accused Instrumentality employed, as required by the claim, an electronic multimedia creator server subsystem operatively coupled to the electronic media submissions server subsystem, necessarily having one or more data processing apparatus in order to manage content, and an electronic creator multimedia database stored on a non-transitory medium,

configured to select and retrieve a plurality of electronic media submissions.  For example, as shown in the screenshot below, when the Accused Instrumentality was accessed, the electronic multimedia creator server subsystem of the Accused Instrumentality selected and retrieved electronic media submissions (*e.g.,* Product Listings with associated photo content and textual content (*e.g.*, "Predator 6500 Watt Max Starting Gas Powered Generator – EPA III," "Central Pneumatic 4 gallon 2 HP 125 PSI Twin Tank Air Compressor," "Central Pneumatic 8 gallon 2 HP 125 PSI Oil Lube Air Compressor")) from the electronic media submissions database (which stored the submitted Product Listings information described above) using an electronic content filter located on the electronic multimedia creator server. As can be seen below in the screenshot, the electronic content filter of the electronic multimedia creator server subsystem used by the Accused Instrumentality  was based at least in part on at least one of the one or more user attributes (*e.g.,* based on, *inter alia*, Brand (*e.g.*, "Central Pneumatic," "Bunker Hill Security," "Kidde"), review rating (*e.g.*, 2 stars, 3 stars, 4 stars), price (*e.g.*, "$0 - $50 (22)," "$50 - $100 (2)," "$100 - $200 (4)")), which in turn affected which electronic media submissions, (*e.g.,* Product Listings and associated media) were selected and retrieved by the electronic multimedia creator server subsystem to be displayed to the user.  For example, as seen in the screenshot below, selecting "Central Pneumatic" would only retrieve and display "Central Pneumatic" products, selecting "Sale Price" "$0 - $50" would only retrieve and display products in that price range, thus demonstrating the existence and usage of an electronic multimedia creator subsystem configured to select and retrieve a plurality of electronic media submissions from the electronic media submissions database using an electronic content filter located on the electronic multimedia creator server.



(*E.g.,*        https://web.archive.org/web/20191214070712/https://www.harborfreight.com/
merchandising-promotions/clearance.html).

28.    Such electronic content filter was used by the Accused Instrumentality to develop
multimedia content (*e.g.,* the profiles, Product Listings, and/or various content as discussed above)
associated with the user (submitter) to be electronically available for viewing on user devices (*e.g.,*
devices such as computers and smart phones incorporating browsers or apps) wherein the
identification of the submitter (*e.g.,* a Host/offeror's name) was maintained with each selected and
retrieved submission within the multimedia content, for example as shown below.



(*E.g.,*        https://web.archive.org/web/20191214070712/https://www.harborfreight.com/
merchandising-promotions/clearance.html).

29.    The Accused Instrumentality, as required by the claim, employed an electronic
release subsystem operatively coupled to the electronic multimedia creator server subsystem,
necessarily having one or more data processing apparatus in order to serve multimedia profile
and/or post content with associated photo, profile picture, and textual content to users, configured
to make the multimedia content electronically available for viewing on one or more user devices.
For example, as shown below, when a customer visited the Accused Instrumentality, multimedia
content associated with the Product Listing was released by the electronic release subsystem for
viewing on various user devices (*e.g.,* computers or other devices with a web browser or app) in

response to a user logging in to the Accused Instrumentality.  When a customer used the filter on the Accused Instrumentality, the electronic multimedia creator server subsystem filtered the content from the database containing the Product Listings to generate content for display on a webpage and the electronic release subsystem was necessarily coupled to the electronic multimedia creator server subsystem to release the webpage to the customer who requested the filtered content.  The electronic release subsystem necessarily operated on a server having one or more data processing apparatus to perform the software function of releasing the webpage.  Harbor Freight used function-specific subsystems, for example as shown below.



(*E.g.,*          https://web.archive.org/web/20191214070712/https://www.harborfreight.com/merchandising-promotions/clearance.html).

30.     The Accused Instrumentality employed an electronic voting subsystem, necessarily having one or more data processing apparatus in order to track voting or electronic rating, configured to enable a user to electronically vote for or rate (*e.g.*, by the user's choices with respect to a selection of one or more stars and textual content in the form of a Review as highlighted in the screenshot below) an electronically available multimedia content (*e.g.*, a multimedia Product Listing provided by a submitter, with accompanying photo and/or textual content as highlighted in the screenshot below). For example, the Accused Instrumentality had a graphical voting system allowing users to select a rating for products from 1-star to 5-stars. The Accused Instrumentality tracked the rating/voting as demonstrated by Harbor Freight showing average ratings for Product Listings. The software that implemented the electronic voting subsystem necessarily required a data processing apparatus (*e.g.*, a processor on a computer or server) to operate. Harbor Freight used function-specific subsystems, for example as discussed below.



(*E.g.*,    https://web.archive.org/web/20191130135231/https://www.harborfreight.com/search?q=
icon%20storage&cid=sitebanner_lp_icontoolsstorage).

31.    The Accused Instrumentality enabled the electronic media submission to include
images and text data associated with the submission, such as the photos and descriptions
highlighted in the screenshot below.



(*E.g.*,    https://web.archive.org/web/20191130135231/https://www.harborfreight.com/search?q=
icon%20storage&cid=sitebanner_lp_icontoolsstorage).

32.    The Accused Instrumentality enabled the electronic media submission to include
text data associated with the submission, such as the descriptions highlighted in the screenshot
below.



(*E.g.,*  https://web.archive.org/web/20191130135231/https://www.harborfreight.com/search?q=
icon%20storage&cid=sitebanner_lp_icontoolsstorage).

33.    The Accused Instrumentality enabled the electronic filter to include text end user rating as a search criterion, such as the ratings criterion highlighted in the screenshot below, or price or brand criterion.



(*E.g.*,        https://web.archive.org/web/20191214070712/https://www.harborfreight.com/
merchandising-promotions/clearance.html).

34.    Plaintiff was been damaged as a result of Defendant's infringing conduct.
Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates
Plaintiff for such Defendant's infringement of the '480 Patent, *i.e.*, in an amount that by law cannot
be less than would constitute a reasonable royalty for the use of the patented technology, together
with interest and costs as fixed by this Court under 35 U.S.C. § 284.

35.    VCA complied with the marking statute, 35 U.S.C. §287. VCA had no commercial
product and no licensees of the patents-in-suit prior to the expiration of the patents-in-suit and
therefore there was nothing to mark.

36.     An alleged infringer who challenges a patentee's compliance with 35 U.S.C. §287 bears an initial burden of production to articulate the products it believes are unmarked "patented articles" subject to §287.  *Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 876 F.3d 1350, 1368 (Fed.Cir. 2017). No one has identified to VCA any unmarked patented articles nor is VCA aware of any unmarked patented articles.

## IV.   COUNT II
## (PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 9,477,665)

37.     Plaintiff incorporates the above paragraphs herein by reference.

38.     On October 25, 2016, United States Patent No. 9,477,665 ("the '665 Patent") was duly and legally issued by the United States Patent and Trademark Office.  The '665 Patent is titled "Revenue-Generating Electronic Multi-Media Exchange and Process of Operating Same."  A true and correct copy of the '665 Patent is attached hereto as Exhibit B and incorporated herein by reference.

39.     VCA is the assignee of all right, title, and interest in the '665 Patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '665 Patent.  Accordingly, VCA possesses the exclusive right and standing to prosecute the present action for infringement of the '665 Patent by Defendant.

40.     The application leading to the '665 patent was filed November 16, 2012, which was a continuation of application no. 11/978,781, which issued as United States Patent No. 8,340,994, which was a continuation of application no. 09/565,438 which issued as United States Patent No. 7,308,413.  (Ex. B at cover).  The '665 patent was first assigned to Virtual Creative Artists, LLC. (*Id.*).

41.     The '665 Patent shares the identical specification as the '480 patent and therefore VCA incorporates the background and discussion of the invention in Paragraphs 11-18.

Furthermore claim 1 involves a system for generating multimedia content. The claim requires, among other things, electronically generating a multimedia file from the retrieved electronic media Submissions in accordance with a selected digital format, wherein the identification of the submitter is maintained with each retrieved submission within the multimedia file. The claim requires electronically transmitting the multimedia file to a plurality of publicly accessible webservers to be electronically available for viewing on one or more user devices over a public network via a web-browser and. This allows electronically transmit data indicating votes or rating of multimedia content in a much quicker and easier fashion based on specific user criteria. There is nothing abstract about this very particular, unconventional, and non-routine system for the generation of multimedia content as specifically claimed and there is no risk of preempting creating and distribution contention generally, or even within the context of the Internet.

42.    The invention is a highly technical electronic process that cannot be achieved with the human mind and is instead rooted in computer technology, including the steps of:

- "electronically retrieving a plurality of electronic media submissions,"

- "electronically generating a multimedia file from the retrieved electronic media submissions in accordance with a selected digital format,"

- "electronically transmitting the multimedia file to a plurality of publicly accessible webservers to be electronically available for viewing on one or more user devices over a public network via a web-browser," and

- "providing a web-based graphical user interface that enables a user to electronically transmit data indicating a vote or rating for an electronically available multimedia content or an electronic media Submission within a respective electronically available multimedia content."

43.    Each of these subsystems are configured in a very specific (and not generic, unconventional and non-routine manner to offer the novel and non-obvious approach claimed invention. For example, claim 1 requires an "electronic media submissions database," which is a subsystem that receives media submissions from Internet users. This is not a generic database but

rather a scalable database that must be able to receive, store, and manage multiple petabytes of multimedia data received from users all over the world. This is one of the many specialized databased required in the claim. In fact, the specification discloses the use of a sophisticated database management system known in the art at the time that was capable of handling data at this level, Oracle7. This type of database management system cannot operate on a generic computing system but rather requires specialized hardware and software.

44.    The claim also provides details to explain how each step operates. For example, the claim requires "electronically retrieving a plurality of electronic media submissions from an electronic media submissions database using an electronic content filter located on one or more data processing apparatus." Further, "the electronic media submissions database" in this step is further required to "store[] [1] data identifying the submitter and [2] data indicating content for each electronic media submission." The step further requires and "electronic content filter." The "filter" also includes a very specific algorithm of "being based at least in part on at least one of the one or more user attributes."

45.    The claims also require an "electronically generating a multimedia file from the retrieved electronic media submissions in accordance with a selected digital format." Manipulation of multimedia data in accordance with a selected digital format is far from generic and was not routine or conventional at the time of the invention. Further, this step requires that the "electronic media submissions database" "stores data identifying the submitter" and the "the identification of the submitter is maintained with each retrieved submission within the multimedia file."

46.    The claims also require "providing a web-based graphical user interface that enables a user to electronically transmit data indicating a vote or rating for an electronically available multimedia content or an electronic media Submission within a respective electronically

27

available multimedia content," which is a well-defined, specific, and unconventional feature. By including this additional voting/rating feature, the claims avoid any risk of preempting the creation and distribution of content.

47.    The claims also have inventive concepts. For example, the claim requires that he filtering tool be at a specific location, remote from the end-users, with customizable filtering features specific to each end user. The "electronic content filter" is located at the server, remote from the end user, and customizable based on user attributes. The "electron voting" step at the time of the invention was also novel, inventive, and added sufficient inventive contributions to avoid a risk of preempting the creation and distribution of media content. It is clearly possible to create and distribute media content without every having to include a "voting" subsystem on what components should be included in such media content.

48.    These arguments overcame a patent eligibility rejection under 35 U.S.C. §101 of the claim at issue during the prosecution of the '665 patent before the United States Patent and Trademark Office.

49.    **Direct Infringement.** Upon information and belief, Defendant directly infringed claims 1, 5, 15, 16 of the '665 Patent in Texas, and elsewhere in the United States, by employing a computer-based system using https://www.harborfreight.com/ ("Accused Instrumentality") (*e.g.,* https://www.harborfreight.com/).

50.    Harbor Freight used a computer-based system for its Accused Instrumentality, to enable Host Brands (Submitters) to share multimedia content pertaining to Product Listings. The Product Listings included multimedia content including image and textual content (*e.g.,* a Product Name, Product Description and images of the Product offered) which were shown to other users based on, *inter alia*, user attributes. This system maked use of one or more data processing

apparatus, and a computer readable medium coupled to the one or more data processing apparatus having instructions stored thereon which, when executed by the one or more data processing apparatus, caused the one or more data processing apparatus to perform an electronic method comprising the functions as further discussed below. Harbor Freight, during the relevant time period, took advantage of multiple cloud server providers for the Accused Instrumentality, as discussed above, as well as scalability within its cloud server providers, employing separate server subsystems for all its meaningfully different functions. Harbor Freight uses and has used during the relevant time period, numerous different networks and providers for, *inter alia*, content management systems, web servers, web hosting, data centers, proxy certificates, SSL certificates, traffic analysis, advertising, and tagging, thereby using separate server subsystems for all its meaningfully different functions, such as those indicated below.



(*E.g.,*      https://web.archive.org/web/20191214070712/https://www.harborfreight.com/
merchandising-promotions/clearance.html).



| Site Elements | |
|---|---|
| External CSS | External Cascading Style Sheets define style rules in a separate CSS file. |
| Embedded CSS | Embedded Cascading Style Sheets define a set of style rules in a <style> element within a web page. |
| Inline CSS | Inline Cascading Style Sheets define style rules directly within an (X)HTML element using the style attribute. |
| Brotli Compression | Brotli is a lossless compression algorithm developed by Google. |
| Weak ETag | A weak ETag is an HTTP header field for validation of cached web pages, that indicates a semantically equivalent page in the cache. |
| IPv6<br>used on a subdomain | The Internet Protocol version 6 (IPv6) provides amongst others a vastly larger address space than the preceding version 4. We consider a website to support IPv6 if a 128-bit address is assigned to it, regardless of the content delivered at that address. |
| HTTP Strict Transport Security | HTTP Strict Transport Security (HSTS) defines a mechanism enabling web sites to declare themselves accessible only via secure connections. |
| Default subdomain www | The websites redirects visitors to its www subdomain, e.g. from example.com to www.example.com. |
| Default protocol https | The websites redirects visitors to use SSL encryption, e.g. from http://example.com/ to https://example.com/. |
| Cookies expiring in months<br>used until recently | Persistent cookies with an expiration time between 1 month and 1 year. |
| Non-HttpOnly Cookies<br>used until recently | Non-HttpOnly cookies are used in the HTTP protocol and also in client side scripts, which may be a security threat. |
| Non-Secure Cookies<br>used until recently | Non-secure cookies may be used via an unencrypted connections, which may be a security threat. |
| Structured Data Formats | |
| JSON-LD | JSON-LD (JavaScript Object Notation for Linked Data) is a method of encoding Linked Data using JSON. |
| Open Graph | The Open Graph protocol, originally developed by Facebook, is an RDFa-based format that enables any web page to become a rich object in a social graph. |
| Twitter/X Cards<br>used on a subdomain | Twitter/X Cards enable automatic attachment of photos, videos and media elements to tweets. |
| Generic RDFa<br>used on a subdomain | Generic RDFa (Resource Description Framework in attributes) is RDFa without further specialization. |
| Markup Language | |
| HTML5 | HTML5 is the fifth revision of the HTML standard. |
| Character Encoding | |
| UTF-8 | UTF-8 (8-bit Unicode Transformation Format) is a variable-length character encoding for Unicode, which is backwards compatible with ASCII. |
| Image File Formats | |
| PNG | PNG (Portable Network Graphics) is a lossless compression image format, suitable to store graphics with uniformly colored areas, and originally introduced as a free, open-source successor of GIF. |
| JPEG | JPEG (Joint Photographic Experts Group) is a lossy compression method suitable to store photographic images. |
| SVG | Scalable Vector Graphics (SVG) is an XML-based vector image format. |
| GIF | GIF (Graphics Interchange Format) is a lossless compression image format, originally introduced by CompuServe and suitable to store graphics, logos and simple animations. |
| WebP | WebP is an image format that provides lossless and lossy compression, developed by Google. |
| Top Level Domain | |
| .com | Commercial entities |
| Server Location | |
| United States<br>used on a subdomain | |
| Content Language | |
| English | |

**Share this page**



About Us    Disclaimer    Terms of Use    Privacy Policy    Advertising    Contact

W3Techs on   in LinkedIn    m Mastodon    Bluesky

Copyright © 2009-2025 Q-Success

(https://w3techs.com/sites/info/Harborfreight.com).  The Accused Instrumentality therefore relied on various servers and data centers to provide the Accused Instrumentality to submitters and users of the website.

51.     The Accused Instrumentality electronically retrieved a plurality of electronic media submissions from an electronic media submissions database on a non-transitory medium.  For example, the Accused Instrumentality retrieved multimedia content from submissions pertaining to building a personalized Host Profile on the Accused Instrumentality from a database, as well as multimedia content pertaining to Product Listings (*e.g.,* image content and textual content for a short-term or long-term listing) from a database. Individual host-users signed up and submitted Product Listings on the Accused Instrumentality, which Product Listings are stored on a user database. Such user database is stored in memory available through the Accused Instrumentality, for example as discussed above. The existence of the user database to store electronic media submissions and from where electronic media submissions are retrieved is demonstrated by the ability of Accused Instrumentality to receive submissions of Product Listings and then retrieve and release the Product Listings to visitors of the Accused Instrumentality from the user database, as shown in the screenshot below.  The user attributes of users who created a Product Listing, which were stored on the user database, included, *e.g.,* the Brand (*e.g.*, "Predator", "Central Pneumatic"), size and brief description (*e.g.*, "6500 Watt Max Starting Gas Powered Generator – EPAIII," "4 gallon 2 HP 125 PSI Twin Wank Air Compressor"), comparison to other products (*e.g.*, "Compare to Honda EM5000SXK3 at $2149.00. **Save $1,679.03,**" "Compare to Craftsman 009-16874 at $239.99. **Save $90.02**"), and price (*e.g.*, "$469.97," "$149.97," "$139.97"), as well as other specifications as shown in the examples below. The Accused Instrumentality's retrieval of electronic media with associated photo content (*e.g.*, photos of the Product Listings shown below)

and textual content (*e.g.*, "6500 Watt Max Starting Gas Powered Generator – EPAIII," "4 gallon 2 HP 125 PSI Twin Wank Air Compressor") associated with the Product Listings from the electronic media submissions database used an electronic content filter located on the one or more data processing apparatus. As can be seen below, such electronic content filter as was used by Harbor Freight was based at least in part on at least one of the one or more user attributes, (*e.g.,* based on, *inter alia*, (*e.g.*, "Central Pneumatic," "Bunker Hill Security," "Kidde"), review rating (*e.g.*, 2 stars, 3 stars, 4 stars), price (*e.g.*, "$0 - $50 (22)," "$50 - $100 (2)," "$100 - $200 (4)")") which in turn affect which electronic media submissions, *e.g.,* Product Listings and associated media, appear to the user, as shown and discussed for example below. Harbor Freight used function-specific subsystems, for example as discussed below (*e.g.*, selecting "Central Pneumatic" would only show "Central Pneumatic" products, selecting "Sale Price" "$0 - $50" would only show products in that price range), thus demonstrating the existence of an electronic multimedia creator subsystem configured to select and retrieve a plurality of electronic media submissions from the electronic media submissions database using an electronic content filter located on the electronic multimedia creator server



(*E.g.*, https://web.archive.org/web/20191214070712/https://www.harborfreight.com/merchandising-promotions/clearance.html).

52. The Accused Instrumentality included an electronic media submissions server subsystem, having one or more data processing apparatus and an electronic media submissions database stored on a non-transitory medium in order to process and store received submissions from a plurality of Hosts (submitters). For example, the use of the "electronic media submissions server subsystem" and the "electronic media submissions database" are shown by the Accused Instrumentality having content pertaining to their respective electronic media submission (*e.g.*, Product Listing provided by third parties through a product submission system) on the Accused Instrumentality, as well as multimedia content displayed on one or both of the user's profile and

the Product Listing. The submissions pertaining to building a user profile and to posting a Product Listing included, *e.g.,* photo and/or textual content. The submissions were provided to the Accused Instrumentality via a submissions electronic interface, *e.g.,* a content portal (*e.g.*, "PO Connect" shown in the screenshot below), accessible for example by logging in and selecting an option to upload such content or import content, configured to receive such electronic media, from a plurality of submitters (*e.g.,* Hosts/users) over a public network (*e.g.,* the Internet) and stored, via an uploading process, in said electronic media submissions database for use in distribution to other users of the Accused Instrumentality.  Harbor Freight documentation shows that proposed goods and services are uploaded using Harbor Freight's website and included links to offerings of vendors, which can include a link to an online catalog of goods and services for the vendor:

## Product Change Application Form

| | | | File No.:2015-Month-# |

**Vendor Information**

| Vendor # | | Vendor Name | |
|---|---|---|---|
| Applicant Name | | Application Date | |
| Phone # | | Email Address | |

**Product Information**

| SKU# | | Product Description | |
|---|---|---|---|

**Change Reason**

| Change Reason | | | |
|---|---|---|---|
| ☐ Standard or US laws | | ☐ Need Cert Update | |
| ☐ Component Change | Detailed Reason Of Change | ☐ Need Cert Update | |
| ☐ Construction Change | | ☐ Need Cert Update | |
| ☐ Others | | ☐ Need Cert Update | |

**Change Description**

Comparison Photos

(*E.g.,* https://web.archive.org/web/20200315103020/https://www.harborfreight.com/gsvm.html).

**Proposed Goods and Services**                                   6. Proposed Goods and Service.pdf

Please upload one or more documents or sheets describing your offerings, line cards, catalogs, links to offerings OR list links to your offerings that illustrate the catalog of proposed lines of goods and or services you carry and offer under this proposal. It does not have to be exhaustive but should, at a minimum tell us what you are offering. It could be as simple as a sheet with your link to your online catalog of goods and services.

(https://www.tips-usa.com/assets/Vendorspdf/210304_MRO_Harbor_Freight_Redacted.pdf).

Furthermore, uploading such information occurs through Harbor Freight's website:



(https://poconnectsit.harborfreight.com/login).  The page at harborfreight.com states that the portal allowed vendors to "manage change requests," and therefore used the Accused Instrumentality's electronic media server to submit electronic media submissions (*e.g.*, Product Listings) for storage in Harbor Freight's electronic media submissions database.  (*Id.*).  Furthermore, upon uploading the Product Listings, the Accused Instrumentality necessarily stored the information in an electronic media submissions database in order to retrieve the information at a later time.

53.    The electronic media submissions database of the Accused Instrumentality used by Harbor Freight which stored the submissions further stored data identifying the submitter and data indicating content for each electronic media submission (*e.g.,* Product Listing such as the generator, tank air compressor, lube air compressor). As shown below and highlighted in the screenshot, data identifying the user (submitter) included, *e.g.,* a name (*e.g.,* "Predator" and

"Central Pneumatic").  As also shown below and highlighted in the screenshot, data indicating content for each electronic media submission included photos (*e.g.*, photos of the generator, tank air compressor, lube air compressor) and/or textual content pertaining to the Product Listing (*e.g.*, "6500 Watt Max Starting Gas Powered Generator – EPA III," "4 Gallon 2 HP 125 PSI Twin Tank Compressor," "8 gallon 2 HP 125 PSI Oil Lube Air Compressor").



(*E.g.*,          https://web.archive.org/web/20191214070712/https://www.harborfreight.com/
merchandising-promotions/clearance.html).



(*E.g.*, *id.*).

54.    The Accused Instrumentality electronically generated multimedia files from the retrieved electronic media submissions, in accordance with a selected digital format (*e.g.,* a digital format compatible with a selected digital format compatible with the particular device such as a computer or smart phone incorporating one or more browsers or apps (for example, a digital format for an Apple device using a Safari browser, or a digital format for a Samsung device using a Chrome browser), and the identification of the submitter was maintained with each retrieved submission within the multimedia file. As shown below, data identifying the user (submitter) included, *e.g.,* a name identifying the user (*e.g.*, "Predator", "Central Pneumatic").



(*E.g.*,      https://web.archive.org/web/20191214070712/https://www.harborfreight.com/merchandising-promotions/clearance.html).

55.    The Accused Instrumentality, in order to distribute its multimedia file to users across the country through the Internet, electronically transmitted the multimedia file to a plurality of publicly accessible webservers, so as to make electronically available multimedia profiles and/or Product Listings, with associated photo and textual content, to various users among a geographically distributed userbase, thereby making the multimedia file electronically available for viewing via a web-browser on one or more user devices over a public network (*e.g.*, the Internet).    For example, as shown in the screenshot below, users accessing the Accused Instrumentality over the Internet, accessed publicly accessible webservers through which Harbor

Freight transmitted photos and textual content for products (*e.g.*, "Predator 6500 Watt Max Starting Gas Powered Generator – EPA III," "Central Pneumatic 4 gallon 2 HP 125 PSI Twin Tank Air Compressor," "Central Pneumatic 8 gallon 2 HP 125 PSI Oil Lube Air Compressor") to the consumers who accessed the Accused Instrumentality.  Harbor Freight used function-specific subsystems, for example as discussed below.



(*E.g.*,            https://web.archive.org/web/20191214070712/https://www.harborfreight.com/
merchandising-promotions/clearance.html).

56.     The Accused Instrumentality employed a web-based graphical user interface enabling its users to electronically access an electronic voting subsystem, enabling tracking of voting or electronic rating, configured to enable a user to electronically transmit data indicating a

vote for or rating of (*e.g.,* by the user's choices with respect to a selection of one or more Stars and textual content in the form of a Review) an electronically available multimedia content (*e.g.,* a multimedia Product Listing provided by a submitter, with accompanying photo and/or textual content as highlighted in the screenshot below). For example, as shown in the screenshot below, the Accused Instrumentality had a graphical user interface voting system allowing users to select a rating for products from 1-star to 5-stars. The Accused Instrumentality receiving the vote/rating from the user over the Internet and tracked the rating/voting as demonstrated by the Accused Instrumentality showing average ratings for Product Listings. Harbor Freight used function-specific subsystems.



(*E.g.,* https://web.archive.org/web/20191130135231/https://www.harborfreight.com/search?q=icon%20storage&cid=sitebanner_lp_icontoolstorage).

57. The Accused Instrumentality enabled the electronic media submission to include text data associated with the submission, such as the photos and descriptions highlighted in the screenshot below.



(*E.g.*, https://web.archive.org/web/20191130135231/https://www.harborfreight.com/search?q=icon%20storage&cid=sitebanner_lp_icontoolstorage).

58. The Freight's Accused Instrumentality enabled the electronic filter to include end user rating as a search criterion, such as the ratings criterion highlighted in the screenshot below, or price or brand criterion.



(*E.g.,*    https://web.archive.org/web/20191214070712/https://www.harborfreight.com/merchandising-promotions/clearance.html).

59.    The Accused Instrumentality enabled the electronic content filter to include criteria defined by keywords. As can be shown below, the user was able to conduct a text search outside of predetermined criteria. The text search represented user-inputted keywords which necessarily narrowed the search to media submissions' text.



(*E.g.,* https://web.archive.org/web/20191130135231/https://www.harborfreight.com/search?q=icon%20storage&cid=sitebanner_lp_icontoolsstorage).

60.     Plaintiff was damaged as a result of Defendant's infringing conduct.  Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such Defendant's infringement of the '665 Patent, *i.e.*, in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

61.     VCA complied with the marking statute, 35 U.S.C. §287. VCA had no commercial product and no licensees of the patents-in-suit prior to the expiration of the patents-in-suit and therefore there was nothing to mark.

62.     An alleged infringer who challenges a patentee's compliance with 35 U.S.C. §287 bears an initial burden of production to articulate the products it believes are unmarked "patented articles" subject to §287. *Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 876

F.3d 1350, 1368 (Fed.Cir. 2017). No one has identified to VCA any unmarked patented articles nor is VCA aware of any unmarked patented articles.

## V.  <u>JURY DEMAND</u>

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## VI.  <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

a.   Judgment that the asserted claims of United States Patent No. 9,501,480 were infringed, either literally and/or under the doctrine of equivalents, by Defendant;

b.   Judgment that the asserted claims of United States Patent No. 9,477,665 were infringed, either literally and/or under the doctrine of equivalents, by Defendant;

c.   Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, and an accounting of all infringements and damages not presented at trial;

d.   That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein; and

e.   That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

July 21, 2025                                DIRECTION IP LAW

                                */s/ David R. Bennett*
                                David R. Bennett
                                (*Admitted to the U.S. Dist. Ct. for the W.D. Texas*)
                                Direction IP Law
                                P.O. Box 14184
                                Chicago, IL 60614-0184
                                (312) 291-1667
                                dbennett@directionip.com

                                *Attorney for Plaintiff*
                                *Virtual Creative Artists, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2025, I electronically filed the above documents with the Clerk of Court using CM/ECF which will send electronic notification of such filings to all registered counsel.

/s/ David R. Bennett
David R. Bennett